No. 26,467.

S. L. Chastain et al., *Plaintiffs*, v. Myrtle M. Greene and P. J. Greene, *Appellants;* M. L. Lansdowne, *Appellee.*

SYLLABUS BY THE COURT.

Building and Construction Contracts — *Abandonment* — *Interference by Owner*—*Change of Plans*—*Amount of Recovery.* A contractor was wrongfully prevented by the owner from completing a dwelling house, and the owner completed it. The work had not proceeded according to the building contract before the contractor was ousted from performance. The plans were changed, extras were added at the request of the owner, savings were effected by the contractor, and the contractor was delayed in completing the building through intervention of the owner, and through his fault. *Held,* the contractor was not limited to recovery of a proportionate amount of the contract price, but was entitled to recover the full value of the labor and material he furnished and a reasonable contractor's profit.

Appeal from Sedgwick district court, division No. 2; Thornton W. Sargent, judge. Opinion filed November 6, 1926. Affirmed.

*O. A. Keach,* of Wichita, for the appellants.

*Robert C. Foulston, W. E. Holmes, D. W. Eaton, George Siefkin, Sidney L. Foulston* and *C. I. Winsor,* all of Wichita, for the appellee.

The opinion of the court was delivered by

Burch, J.: The action was one to foreclose a materialman's mechanic's lien on a dwelling house. Plaintiff recovered, and the judgment in his favor is not contested. The contractor who had undertaken to erect the improvement, and who was a defendant in the action, claimed that, without fault on his part, the owner prevented him from performing, and prayed judgment against the owner for the value of the labor and material he had furnished, and a fair profit, and for foreclosure of a mechanic's lien. The owner claimed that, without fault on his part, the contractor abandoned the work, and prayed judgment against the contractor for the cost of completing the building. The contractor recovered, and the owner appeals.

The contract for erecting the building was signed on September 19, 1921, and a few days later construction was begun. The work was delayed. The owner charged the contractor with lack of diligence and other delinquencies, and the contractor charged the owner with interference with progress of the work and other delinquencies.

Building and Construction Contracts, 9 C. J. p. 822 n. 13.

On December 7, the owner gave the contractor a check for $250, and urged the contractor to go ahead and complete the house, which the contractor said he would do. On December 8 work on the house stopped. On December 10 the owner served on the contractor a seven-day notice to finish the building, and about December 19 the owner commenced completion of it.

The lawsuit turned on who was at fault for cessation of work on December 8, and the nature of the fault. There was evidence that on December 8 the owner discharged the contractor's workmen then at work on the house, and locked up the house. This evidence was disputed. The court submitted the matter to the jury in the following instruction:

"If you find that P. J. Greene made unfounded and unreasonable complaints as to the details of the work to be done, such complaints did not justify Lansdowne in abandoning the work, provided Greene took no step to compel Lansdowne to quit the work; but if you find that Greene made unfounded and unreasonable complaints as to the details of the work and took steps to prevent Lansdowne from completing it, such as locking the door, before Greene or Wilson took over the work, or excluding the workmen, or telling him not to go on with the work, then you are instructed that such unfounded and unreasonable complaints, if any, by Greene, under such circumstances would justify Lansdowne in abandoning the work."

The instruction is criticized as finally vesting privilege to abandon on conduct which the first part of the instruction said would not justify abandonment. The proviso in the first part of the instruction and the words "under such circumstances" in the latter part, make the meaning clear that privilege to abandon depended on acts of prevention.

The jury found generally and specifically for the contractor. The owner contends that there was no adequate evidence to support the jury's findings; that the evidence was overwhelmingly to the contrary; that plaintiffs' witnesses were not certain about the date December 8, and a circumstance by which they fixed the time was clearly proved to relate to an earlier day; that one of plaintiffs' witnesses testified he thought "they just went out," and another of plaintiffs' witnesses was unreliable and unworthy of belief; that many things were at utter variance with the owner's having discharged the contractor's workmen on December 8, and that the jury were unfair and were prejudiced. It will be observed that in this contention there is no assertion there was no evidence to sustain the jury's finding that on December 8 the owner discharged plaintiffs'

workmen then on the job. There was such evidence, and the jury
chose to base their finding on that evidence. Conflicts in the evi-
dence, credibility of witnesses, and weight of evidence, were matters
for the jury, the district court approved the finding, and it is sheer
harassment of this court to contend here against the finding.

The owner contends the case was tried on the theory of rescission
by the contractor, and the court should have determined whether
the contractor had valid ground for rescission. The contention is
based on the owner's view of responsibility for final withdrawal
of the contractor, and not on the view taken by the court and jury.
The case was tried on the theory presented by the pleadings: Did
the contractor wrongfully abandon the work, or did the owner
wrongfully prevent him from performing? Evidence bearing on
attitudes of owner and contractor was extended to December 28,
when the contractor, through his attorney, notified the owner that
the contractor intended to hold the owner liable for the value of
services performed, including labor and material, and for a reason-
able profit. Whether the contractor could do that depended on the
facts. The owner's side of the controversy was duly submitted to
the jury in the court's instructions, and the jury found the facts in
favor of the contractor.

The owner contends that in no event could the contractor recover
on *quantum meruit*, and that if he were to recover, the amount
should be a proportionate part of the contract price. The case of
*McGrew v. Investment Co.*, 106 Kan. 348, 187 Pac. 887, is cited as
conclusive upon the subject. In the McGrew case, the contractor
proceeded regularly with performance of the contract until he was
stopped by the owner, and the rule of proportion was properly ap-
plied. In this case, the plan of the building was changed before
work began. Subsequent changes were made and extras were added,
at the owner's request. Savings were effected by the contractor by
less expensive methods of construction, and prosecution of the work
was delayed by intervention and through fault of the owner. Under
these circumstances the rule of proportion could not be applied, and
the contractor was entitled to recover the full value of all material
and labor furnished in partial performance, and a reasonable con-
tractor's profit.

The foregoing disposes of the merits of this appeal. Assignments
of error relating to rulings on evidence, instructions to the jury, spe-
cial findings of the jury, insufficiency of lien statement, and amend-

ment of lien, have been duly considered. There is enough in the record to show that the owner was not guilty of litigiousness in contesting the contractor's demands and in presenting his own claims to the jury; but the court is not able to declare that it affirmatively appears from the record that trial error prejudicial to the owner's substantial rights was committed.

The amount of the general verdict did not include a sum found specially by the jury which the contractor was entitled to recover. The court properly added the two amounts in rendering judgment. The special finding referred to unpaid bills incurred by the contractor for material and labor, some of which had been reduced to judgment and lien against the owner. Any payment made by the owner on the bills or judgments should of course be credited on the contractor's judgment, and the case is left open in the district court for proper proceedings to that end.

The judgment of the district court is affirmed.